Today is 22-1623, Caddo Systems v. Siemens. Mr. Chan, please proceed. Good morning, Your Honors. May it please the Court, Alex Chan for Caddo Systems and 500 Technologies. I'd like to reserve five minutes for rebuttal. There are multiple issues on the field I'd be happy to address, questions on any, but I would like to focus on... I would like to focus on the District Court's errors in granting summary judgment on Siemens' license defense, and more specifically, on the District Court's misinterpretation of Section 1.5b and Section 4.4 of the license agreements. I would just start off with Section 1.5b first. That section defines what a Microsoft technology product and services is. It includes third-party products that consist of or use any Microsoft technology. And here, the third-party products that are alleged to infringe the asserted claims use an infringing multi-component software called Red Record. And the District Court erred by interpreting Section 1.5b to cover these components as a whole, even when it also recognized that under this section, a third-party product that uses these components in some limited capacity does not qualify in its entirety as a Microsoft technology. And so, in that sense, the District Court's grant of the summary judgment went against four key factual underpinnings. I would like to quickly go through those four for your reference. And the first one, important facts, is that the Red Breadcrumb was developed by a company called Telerik and using its own proprietary technology, not Microsoft technology. And we heard this directly from Telerik's corporate witness. And he said that a developer who wanted the accused functionality but only had access to .NET and WPF would have to create their own breadcrumb components. And this is – and I would refer the Court to Appendix 2382 for this exact line of testimony. But what do you make of the fact that the breadcrumb functionality is combined with or uses and aggregated with the .NET slash WPF? I mean, there doesn't seem to be a dispute that those are combined. Yeah, this notion that the breadcrumb is built on top of .NET, it's really of no consequence. Because if you look at Section 1.5b, it offers no coverage for those portions of the components that don't use .NET and WPF. And we have demonstrated it. Did you make the argument below the only the portion of such combinations, that language in 1.5? Yeah, we have, Your Honor. And I would point you to a couple of places for those arguments. So the first one you will find is in our opposition brief filed with the District Court. You can look at Appendix 2350, for example. There we argued that Siemens ignored this critical section about this portion language. What other specific section would have specific heading for that? And we eliminated the fact that evidence is missing for the portion of the breadcrumb. I'm sorry, I thought that maybe this is a different question. But where did you, either here or below, identify specific portions of red breadcrumbs that can work without using the .NET underlying platform? Yeah, we actually identified that specific place. Give me a second. I would refer the court to 2236, where we never really relied on the Microsoft. Technology in the complaint, but also... Well, I guess I'm focusing on, it seems to me, 1.5B says, by its plain terms, a portion of software that uses an underlying true Microsoft software, like .NET, is under 1.5B. So, and you're now making an argument about this portion language. And I guess it seems to me that you have to be able to say, here is a portion that doesn't use, whose use does not itself use .NET. And I don't remember, and I think the district court said you didn't identify any such portion. And I'm not seeing where you did. Yeah, certainly I acknowledge this point. But I also want to eliminate the fact that if you look at Siemens' opening brief on page 28, second paragraph, when they laid out those limitations that they believed to be allegedly performed or used Microsoft technology, they explicitly left out, for example, the limitation of constructing the active path, which is the portion at issue. This portion of Red Bread Crumb that is used to construct this active path, which is the essential inventive portion of this sort of claim, is not covered by the .NET and WPF. And so the fact that it depends or it uses… Instead of drawing my time, I will definitely respond to this during my rebuttal. But I do have a site for you that will be able to… This is one of your main arguments, right? And this is the type of information you should have readily available. I acknowledge that. I suppose you can address that to the extent that the other side addresses it in your rebuttal. Would I be right in thinking that if indeed there has not been identified any portion of the Red Bread Crumb that doesn't use .NET, and it's all under 1.5, and at that point you have to lose because… I guess I'm thinking two reasons which I'm interested in hearing about. One is that the only way you could get out of it at all is if 4.4 provided escape. But there are a couple of problems with 4.4. One is that the parenthetical in 4.4 says it allows escape only of things that are outside 1.5, not things that are inside 1.5. And second, it doesn't apply to the release provision of the settlement agreement, 2.2, or the relevant covenant not to sue provision, 4.2. It applies only to the license provision, 3.2, and peculiar covenant provision, 4.3. Both of which seem to me to be reasons that 4.4 cannot provide an escape if indeed all portions of the accused software are under 1.5. Well, there's a lot to unpack. This is an agreement that has interrelated parts, so it's hard to come to any conclusion without thinking about all of them. Absolutely, and there's a lot to unpack, and I can address each one of those issues in turn. But since Your Honor touched on 4.4, maybe this is a good point to address 4.4, because I think it is very important to understand the applicability of 4.4 here in this case. Our position is that the Court decided that Section 4.4 does not apply to Red Bread Crumb because it views that section as being inapplicable to non-Microsoft products in contravention to the explicit language. And I'll highlight this language to the Court. To non-1.5. Well, not really, and let me explain why. 4.4 here specifically says that the license and the covenant do not preclude enforcing the license IP against third parties based on third-party products. But then if you continue reading it, and that's a sentence that the District Court missed entirely, and it reads, solely because such third party is using Microsoft technology product and services. And so that sentence highlights that the third-party products being referred to in Section 4.4 are in connection with the use of Microsoft technology. And so you can't really delineate those two sentences and not read them in conjunction with each other. And so if I may continue on with this section, our position is .NET and WPF viewed in the light most favorable at this stage in favor of cattle. It doesn't provide, for example, the portion of the Red Bread Crumb used to construct the active path. Again, this is one of the most essential and inventive aspects of these sort of claims, and there's no dispute among the parties or the District Court that there's no evidence that shows that this portion uses Microsoft technology. And so just focus on that for a second, and even assuming for a second that, yes, maybe this portion does use, again, in their favor instead of our favor, does use Microsoft technology. Here, there are three conditions, and if those three conditions are met, then I'll go. Enforcement is permitted. Parties do not dispute the first and the third conditions are met. There is no dispute about that in the record. The question is the second provision, which is about the essentiality or the inventiveness of these sort of claims. In our position here, again, it's pretty clear .NET and WPF doesn't provide that. There is no factual dispute at all, and our position is .NET and WPF do not provide any essentiality. And you can easily glance through our complaint to get that because the complaint does not rely on any Microsoft technology to demonstrate infringement, and that on its own shows it is not essential. But also, in order for me to touch on- Can I just ask, sort of as a procedural matter, this is on summary judgment, so the complaint is, I don't know, to exaggerate beside the point, right? Summary judgment is about evidence, and am I wrong in understanding that a movement, the other side, put on evidence, or introduced evidence, that all of RADREDCOM uses .NET? And so in order for the district court to say, no, I can't accept that, you needed evidence that said, ah, here are some portions that don't. Right. And that's why this question of the evidence seemed absolutely central to your entire argument. Absolutely. And if I may, I know I'm running out of time, this is a very interesting case because the court allowed Siemens to move for summary judgment even before we had a scheduling order. This is well in advance, well before fact discovery even started. And so everything on the record, in terms of facts, was very limited in the sense that the party really was not able to conduct any expert or fact discovery at all. You didn't present an argument that there was a procedural impropriety in the grant of summary judgment, in your briefs? Yeah, I agree, and I don't think that is the position we're taking. We're just saying there are a lot of genuine issues and material facts that require further fact finding. But the court did allow for discovery for the purposes of the summary judgment motion. Very limited discovery, and we did take discovery of Telerec's corporate witness. Again, Telerec is Siemens' software development vendor for the breadcrumb components. Okay, would you like to save your remaining time for rebuttal? Yes, please. Thank you, Your Honor. Ms. Cleveland, please proceed. May it please the Court. Picking up on the discussion of discovery, discovery on this particular issue was allowed. In fact, there were motions to compel an additional discovery was taken on this particular issue. So had additional discovery been needed to combat the summary judgment motion, that was an option at the lower court that appellants didn't take advantage of. Looking at the license issue itself, what appellants conflate here is the essential and inventive language of 4.4 and the used with and uses language of 1.5b. Is there a portion of RAD Breadcrumb that does not use .NET? The evidence in the record is that in order for RAD Breadcrumb to work, it needs to reach out to and get information from the Microsoft technology. So this new argument on appeal that appellants make of suggesting that there might be some aspect within the code that can function without reaching out to the Microsoft libraries and having that code come back was not in the lower court. I'm not aware of anything that would get to what is accused in this case. At the beginning of this procedure in the district court, we asked for them to specifically identify what was being accused. The disclosure is basically one screenshot. If you want to get to that screenshot, you can't do it without reaching out to the Microsoft code. And that was the entirety of the disclosure. There was another disclosure that no, we're only accusing this little tiny portion. The entire point of that disclosure during the procedure at the district court was to avoid an issue like this, where there is a later allegation that no, no, that's not what we're accusing. We're only accusing this portion, and that doesn't use Microsoft. The district court did point out that the portion at Appendix 5 was the breadcrumb feature. And at Appendix 11, the district court went through the various evidence, including that it was built on top of the .NET framework and that the functionality could not function without referencing the .NET information. As for the last portion, while appellants in the Statement of Undisputed Facts denied that last statement that it didn't work on legal grounds, they denied that it was capital T Microsoft technology. It wouldn't work without Microsoft technology, as they said it was construed in 1.5. They did not deny that it wouldn't work with lowercase Microsoft technology, the .NET framework technology, that it needed to work and render what they accused of infringement. So when appellant conflates this concept of it, it has to be essential or inventive in order to get the benefit of 1.5. That is language that is not in 1.5. And what the district court found here was both that the breadcrumb was combined with, used with, or aggregated with, and that it uses Microsoft technology, which takes care of the portion of 1.5 that is the language that says, but only if it consists of or uses Microsoft technology. So both were found. Do I understand correctly that 4.4 at that point is inapplicable for two independent reasons? One, the parenthetical in 4.4 that says whatever 4.4 says is an exception from some previous things. It's only stuff that falls under 1.5. I'm trying to avoid the phrase Microsoft technology because it is self-evidently troublingly ambivalent when you just speak it. So stuff that falls under 1.5, whether it's 1.5a or 1.5b, and having concluded that everything that's accused is within 1.5, 4.4 doesn't apply for that reason. Is it also, first of all, is that... That is true. That's because the court's footnote, right? That is the court's footnote. Is it also the case that the 4.4, whatever it creates an exception to, does not create an exception to the release provision 2.2 and the covenant, not supervision 4.2, and that they are, at least one of them, maybe both of them, independent grounds for the defense? There was less discussion of that than there might have been. That is also true, that the release would certainly still survive, and the release was not just a release for past. It was a release into the future. So that is the second basis for why, even if the court didn't accept the plain language of 4.4 covering everything that's in 1.5, and therefore 4.4 not applying, which was the district court's conclusion, then the second reason why it wouldn't affect the finding of summary judgment here is that it only negates 3.2 license and the 4.3 covenant. We've also made an argument that it is essential technology, but that's in the briefs. Turning, I want to particularly be able to address any of your questions as to Seaman's AG and the proper dismissal based on lack of personal jurisdiction. He realized that he didn't bring that up, which means he can't address it in rebuttal unless you address it now. So do you want to continue? Only if you have questions. Thank you so much. Mr. Chan, you have some rebuttal time. Thank you, Your Honors. I just wanted to address Judge Rainier's question about the citation, and you can find it at citation 2347, in which we argued that there's no evidence, time.net, to the construction of the active patent. This is, again, in Appendix 2347 at the very top. I also wanted to touch on Judge Toronto's issue in relation to the release provision under 2.2. And I want to make sure this is clear, because the release provision, when read in conjunction with Section 4.4, you can't really delineate them, meaning if a party can be sued, meaning if enforcement is allowed under 4.4, by definition, no release, covenant, or license could be granted to that party. Because, again, 4.4 explicitly provides for enforcement against third parties that use Microsoft technology. The language is very clear here. And maybe this is where I want to elaborate a little bit more about the parentheticals that says, products that are not Microsoft technology, products and services. That language, it's really on its own referred to third-party products in their standalone form. And so if you have a product like here in this case, a product that is developed by Siemens, that in itself is a third-party product. And if you look at the product on its own, it doesn't use any Microsoft technology. But when you put that product into operation and run it within the so-called .net and WPF, then that's where the next sentence comes into play, solely because such party is using Microsoft technology, product, and services. And so I think it's really important for us not to forget the sentence in there that this section contemplates such use and permits enforcement when those three conditions are met. Also, I wanted to touch on one thing. We keep on saying Microsoft technology, but there is an open question, a fact dispute, whether .net and WPF are in fact Microsoft technology. We have put in evidence in the record that this is open-source software. It's contributed and attributed by the open-source community. There is no evidence in the record that says this is Microsoft technology. They just assume it is because it was founded by Microsoft. But we have provided evidence in the record that says this is a free software development platform. And so on that basis, I think it would be reckless to simply view .net and WPF as Microsoft technology without additional further fact-finding as to whether this is indeed the case. But again, the burden is on them to demonstrate this is Microsoft technology. You all drafted the license bill, so now you're arguing against the provisions in the license. You're arguing that the license is somehow defective and you're the draftee. Shouldn't we, as you being the draftee, shouldn't we infer any of our conclusions against you? If you're referring to Section 4.4, that provision, I don't think it's defective because the sentence says solely because such party is using Microsoft technology. Because I don't think there's any dispute as far as what that sentence means in connection with third-party products. If you think the license is deficient because of definition, you should have included definitions in it to begin with. These other clauses or provisions that you say their absence makes the license deficient, well, this is your license. You drafted it. Understood. I know my time is up. The only one point I want to address is that a jury in a different case has already rejected the same lines of defense based on the same license agreement and based on the same WPF slash .net technology. I know this case involves a different set of third-party products, but that's largely irrelevant because the same question was presented there, whether this Microsoft agreement covers third-party products like the ones here based on the use or operating within the .net WPF. Okay. Thank you, Mr. Chan. Thank you so much. I thank both counsel. The case is taken under submission.